UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| WILLIAM SANDERS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 09-CV-036-JMH |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| SAMUEL ARMSTRONG, | ) | |
| individually and in his | ) | |
| official capacity; JERRY | ) | |
| HUBBARD, individually and | ) | |
| in his official capacity; MIKE | ) | |
| RIGNEY, individually and | ) | |
| in his official capacity; and | ) | |
| JESSAMINE COUNTY, KENTUCKY, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*      \*\*      \*\*      \*\*      \*\*

Defendants have filed a Motion for Summary Judgment [Record No. 15]. Plaintiff has responded [Record No. 16], and Defendant has replied [Record No. 17]. Plaintiff also filed a Motion to Strike Exhibits attached to Defendants' Motion for Summary Judgment [Record No. 18]. Defendants have responded [Record No. 20], and Plaintiff has replied [Record No. 23]. Both of these motions are ripe for decision.

I.    **STATEMENT OF FACTS**

Plaintiff William Sanders avers in his complaint that Jessamine County Detention Center deputy jailers Samuel Armstrong, Jerry Hubbard, and Mike Rigney physically attacked Plaintiff while he was a pre-sentencing detainee at the Jessamine County Detention Center ("JCDC"). [Record No. 1]. Though there remains some

dispute as to how the altercation began and the extent of the injuries, it is undisputed that on January 30, 2008, the medication nurse and Plaintiff had a brief discussion about the jail's requirement that Plaintiff take his medication, antacids, in front of her as Plaintiff returned to his cell. [Record No. 15-4]; [Record No. 16-3, p. 26-28] It remains unclear from Plaintiff's sworn interrogatory responses and deposition testimony whether the medication nurse saw Plaintiff ingest the antacids. *Compare* [Record No. 16-3, p. 27 lines 21-22]("So I proceeded to open the packages and eat them in front of her.") *with* [Record No. 16-2, p. 4]("I turned around, put the pills in my mouth and started chewing them."). Regardless, Plaintiff has stated that all three defendants[1] came to his cell and that Armstrong told Plaintiff to pack up his things and not ask questions. [Record No. 16-3, p. 32, line 25 - p. 33, line 16].

Plaintiff, however, admits that upon Armstrong's profanity laced request, Plaintiff responded in a similarly profane way in the negative, instructing Armstrong that Armstrong could do it for Plaintiff. [Record No. 16-2, p. 4]. At this point, Plaintiff stated in his sworn interrogatory response that he walked toward the door of his cell when Armstrong shoved Plaintiff over a table. Plaintiff then stated that Hubbard and Rigney proceeded to restrain

---

[1] Defendants dispute that Defendant Rigney entered the cell at this time.

2

him while Armstrong banged Plaintiff's head against the ground shouting about Armstrong's brother and uttering racial slurs and Rigney kicked Plaintiff in the ribs. *Id*. Plaintiff also stated that the attack injured his face, ear and neck and that he has suffered from hearing loss as well as a number of other ailments. [Record No. 16-2, p. 5]. Defendants have submitted incident reports as well as a Kentucky State Police Investigation Report and Findings[2] looking into the incident that dispute the extent of the injury and also state that Plaintiff admits he made an aggressive move towards Armstrong prompting the altercation. [Record no. 15-1 to -40].

## II. MOTION TO STRIKE

### A. The Court will consider Exhibits 2, 3, 5, 6, 7 and 32 for purposes of deciding Defendant's Motion for Summary Judgment.

Defendants submitted thirty-six exhibits attached to their Motion for Summary Judgment without objection from Plaintiff in his Response to which Plaintiff later objected in a Motion to Strike. [Record No. 15]. Newly amended Federal Rules of Civil Procedure Rule 56[3] does away with the requirement that exhibits be attached

---

[2] The Kentucky State Police initiated an investigation after being contacted by Plaintiff's sister. [Record No 15-7].

[3] The Sixth Circuit has held that, generally, "a new procedural rule applies to uncompleted portions of suits pending when the rule [becomes] effective." *Toth v. Grand Trunk R.R.*, 306 F.3d 335, 344 n.2 (6th Cir. 2002)(citation omitted); *see also United States v. Michigan*, 234 F.R.D. 636, 640 (E.D. Mich. 2006)(citation omitted)("The Sixth Circuit has adopted the general rule that uncompleted portions of suits pending when an amendment

to affidavits and allows parties to cite generally to materials in the record. Fed. R. Civ. P. 56(c)(1)(A). Appropriately, it also allows a party to object that the material could not be presented in a form that would be admissible in evidence. Fed. R. Civ. P. 56(c)(2). Thus, a separate motion to strike disputed exhibits is no longer required and any notice of objection to supporting evidence should be included in response to the Motion for Summary Judgment when submitted. *See* 2010 Notes of Advisory Committee ("There is no need to make a separate motion to strike."); *see also Morgan v. Sears, Roebuck & Co.*, 700 F. Supp. 1574, 1576 (N.D. Ga. 1988)("[T]he proper method for challenging the admissibility of evidence . . . is to file a notice of objection[, thereupon the Court] will assess the evidence's admissibility and will consider any objections raised by the defendants to the testimony presented . . . when ruling on the merits of the summary judgment

---

to the Federal Rules of Civil Procedure becomes effective must comply with the amended rule."). Amendments to Rule 56 became effective on December 1, 2010, one day before Defendants filed their Motion for Summary Judgment. These amendments focus on the procedures used by the parties. The standard that this Court applies in making its decision to grant or deny a motion for summary judgment remains the same. Fed. R. Civ. P. 56 Notes of Advisory Committee on 2010 Amendments [hereinafter 2010 Notes of Advisory Committee]. Therefore, the law remains the same as to the standard governing rule 56 but the parties must comply with any procedural changes, when applicable.

motion.")(construing Rule 56 prior to the 2010 amendments).
Furthermore,

> [i]f a party fails to object before the
> district court to the affidavits or
> evidentiary materials submitted by the other
> party in support of its position on summary
> judgment, any objections to the district
> court's consideration of such materials are deemed to have been waived, and [this Court]

will review such objections only to avoid a gross miscarriage of
justice.

*Johnson v. United States Postal Serv.*, 64 F.3d 233, 237 (6th Cir.
1995)(brackets in original)(quoting *Wiley v. United States*, 20 F.3d
222, 226 (6th Cir. 1994))(construing Rule 56 prior to the 2010
amendments). Plaintiff responded to Defendants' Motion for Summary
Judgment and the attached exhibits, however, without raising any
objection to the form of the exhibits attached to Defendants'
motion. Plaintiff stated that he did not initially object on the
belief that "Defendants might cure the defect in their motion by
filing appropriate affidavits with their reply to the Plaintiff's
response to the summary judgment," but Plaintiff has ignored that
by doing so he may well have waived his opportunity to object.
[Record No. 18, p. 1]. Furthermore, in his response, Plaintiff
questioned the credibility, not the authenticity, of "the self-
serving, unsworn incident reports of the defendants and other law
enforcement personnel." [Record No. 16-1, p. 4]. Thus, both
parties treated these exhibits as "materials in the record," not
subject to objection, under Rule 56(c)(1)(A).

Furthermore, review of Plaintiff's untimely objections to the

disputed evidence would not "avoid a gross miscarriage of justice."
*Johnson*, 64 F.3d at 237. Newly amended Rule 56 allows parties to
cite to documents or other materials so long as they are "materials
in the record" without requiring any sworn statement for purposes
of authentication. Fed. R. Civ. P. 56(c)(1)(A). The rule further
provides that "[a] party may object that the material cited to
support or dispute a fact cannot be presented in a form that would
be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Again,
however, this does not impose a requirement of a sworn statement
for authentication as set forth in the 2010 Advisory Committee
Notes:

> The objection functions much as an objection
> at trial, adjusted for the pretrial setting.
> The burden is on the proponent to show that
> the material is admissible as presented or to
> explain the admissible form that is
> anticipated.

2010 Notes of Advisory Committee. Defendants have met this burden
for exhibits 2, 3, 5, 6, 7 and 32 as they have explained that each
report author, based on personal knowledge, could competently
testify on the matters asserted in the various reports. [Record
No. 20, p. 6-7]. Furthermore, Plaintiff has not challenged this
argument in his Reply. [Record No. 23]. Thus, exhibits 2, 3, 5,
6, 7, and 32 would not be stricken from the record even if the
Court were to consider Plaintiff's Motion to Strike as Plaintiff
has made the requisite showing that each of these exhibits could be
presented in an admissible form at trial. As to exhibits 1, 8 and

31, for which the Defendants failed to make a similar showing, the Court would not need to reach a conclusion as to their admissibility as these exhibits are not necessary to decide Defendants' Motion for Summary Judgment. *See supra* Part III. In any event, this Court shall deny Plaintiff's Motion to Strike Defendants' Exhibits to Summary Judgment Motion [Record No. 18].

## III. MOTION FOR SUMMARY JUDGMENT

### A. Standard of Review

A grant of summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). This burden is met simply by showing the Court that there is an absence of evidence on a material fact on which the nonmoving party has the ultimate burden of proof at trial. *Id*. at 325. The burden then shifts to the nonmoving party to "come forward with some probative evidence to support its claim." *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994). A material fact is one that may affect the outcome of the issue at trial, as determined by substantive law. A genuine dispute exists on a material fact, and thus summary judgment is improper, if the evidence shows "that a reasonable jury could return a verdict for the nonmoving party." *Anderson v.*

*Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986); *Summers v. Leis*, 368 F.3d 881, 885 (6th Cir. 2004). The judge's function is not to weigh the evidence, but to decide whether there are genuine issues for trial. *Anderson*, 477 U.S. at 249; *Multimedia 2000, Inc. v. Attard*, 374 F.3d 377, 380 (6th Cir. 2004).

**B. Plaintiff has not shown Defendants used excessive force in violation of 42 U.S.C. § 1983.**

**1. Defendant Jessamine County, Kentucky is entitled to Eleventh Amendment Immunity.**

Defendant Jessamine County, Kentucky is entitled to Eleventh Amendment immunity. For Plaintiff to aver that a local government violated 42 U.S.C. § 1983, Plaintiff must show that "a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[ed] the injury that the government as an entity is responsible [for] under § 1983." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Defendant Jessamine County argues, and Plaintiff concedes that no such policy or custom existed. [Record No. 15-2, p. 29]; [Record No. 16-1, p. 8]. Thus, Defendant Jessamine County is entitled to Eleventh Amendment immunity. The Court, therefore shall grant the Motion for Summary Judgment as to Defendant Jessamine County, Kentucky. Furthermore, as "[o]fficial-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent," the Court shall also grant the Motion for Summary Judgment

as to Armstrong, Hubbard and Rigney, in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)(citation omitted).

**2. Defendants are entitled to qualified immunity as Plaintiff has not shown a violation of his rights protected under the United States Constitution.**

The remaining Defendants argue they are entitled to qualified immunity as "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). As a result, "[t]he threshold inquiry in a qualified immunity analysis is whether a constitutional violation occurred at all." *Purisch v. Tenn. Technological Univ.*, 76 F.3d 1414, 1423 (6th Cir. 1996)(citing *Centanni v. Eight Unknown Officers*, 15 F.3d 587, 589 (6th Cir. 1994); *Silver v. Franklin Twp.*, 966 F.2d 1031, 1035 (6th Cir. 1992)). Here, Plaintiff avers Defendants violated and/or conspired to violate Plaintiff's rights guaranteed under the Fourth, Fifth, Eighth and Fourteenth Amendment to the United States Constitution. [Record No. 1, paras. 24, 25, 25 [sic], 26, 44-48]. Defendants argue there was no violation of any constitutional rights, and in the alternative, that any potential violation would not have been clearly established at the time of the averred action. [Record No. 15-2].

**i. Plaintiff avers no violation of the Fourth or Fifth Amendment or the Equal Protection Clause of the**

**Fourteenth Amendment.**

Plaintiff's argument regarding any potential violation of the Equal Protection Clause, however, does not meet the bar required for Plaintiff to show a constitutional violation. Plaintiff must show that "a state actor intentionally discriminated against the [P]laintiff because of membership in a protected class." *Purisch*, 76 F.3d at 1424 (6th Cir. 1996)(quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)). When a plaintiff opposes a summary judgment motion meant to defeat an equal protection claim, the "plaintiff has the burden of demonstrating that the defendants treated similarly situated individuals in a disparate manner." *Buchanan v. City of Bolivar*, 99 F.3d 1352, 1360 (6th Cir. 1996). While Plaintiff attempts to argue that averred racial slurs used during the altercation signal a racial motivation, Plaintiff falls well short of showing that Defendants treated other "similarly situated individuals in a disparate manner," especially in light of his deposition testimony regarding the potential motivation behind the incident. *See* [Record No. 15-30, lines 17-18](deposition testimony in which Plaintiff admits that he is not sure if the attack occurred because of his race); [Record No. 15-31, liens 1-17](deposition testimony in which Plaintiff states he is not certain he was treated differently than white inmates because he was black and believes the motivation behind the altercation was a separate incident that occurred

between Plaintiff and Defendant Armstrong's brother). Thus, Plaintiff has not met his burden of showing that the Defendants "treated similarly situated individuals in a disparate manner' and the Court shall not consider Plaintiff's claims regarding the Equal Protection Clause of the Fourteenth Amendment. *Buchanan*, 99 F.3d at 1360.

Furthermore, the record set forth by Plaintiff cannot show that Defendants violated Plaintiff's rights guaranteed under the Fourth or Fifth Amendment to the Constitution. It is undisputed that "Plaintiff was incarcerated as an inmate at the Jessamine County Detention Center." [Record No. 1, para. 13]; [Record No. 2, para. 3]. As a result, Plaintiff cannot aver a Fourth Amendment claim since "the excessive force claim [did not arise] in the context of an arrest or investigatory stop of a free citizen." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Furthermore, as the Jessamine County Detention Center is a state actor, any potential Due Process claim arises out of a violation of the Fourteenth Amendment. *Betts v. Brady*, 316 U.S. 455, 462 (1942), *overruled in part on other grounds by Gideon v. Wainwright*, 372 U.S. 335 (1963); *See also Mathis v. Franklin Cnty. Children Servs.*, No. 2:08-cv-084, 2008 U.S. Dist. LEXIS 31250, *14 (S.D. Ohio Apr. 16, 2008)("[A]ctions by state or local governmental entities are properly analyzed under the Fourteenth Amendment rather than the Fifth Amendment."). This Court, therefore, shall consider any

potential violation of the Due Process Clause as being brought under the Fourteenth Amendment.

> **ii. Defendants have not violated Plaintiff's rights guaranteed under the Fourteenth Amendment to pretrial detainees through the use of excessive force.**

In regard to the remainder of Plaintiff's argument, Plaintiff focuses primarily on an alleged violation of his constitutional rights as a pretrial detainee through Defendants' use of excessive force in violation of the Eighth Amendment and the Due Process Clause of the Fourteenth Amendment. As an initial matter, the Court recognizes that Plaintiff's right to be protected from the use of excessive force as a *pretrial detainee* arises from the Fourteenth Amendment. *See Graham*, 490 U.S. at 395 n.10 (1989)(citations omitted)("It is clear, however, that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. . . . After conviction, the Eighth Amendment 'serves as the primary source of substantive protection . . . in cases . . . where the deliberate use of force is challenged as excessive and unjustified."). The Supreme Court has held that "the state does not acquire the power to punish with which the Eighth Amendment is concerned until after it has secured formal adjudication of guilt in accordance with due process of law." *Ingraham v. Wright*, 430 U.S. 651, 671 n.40 (1977). As a result, the Supreme Court has stated in dicta that "the Eighth Amendment's protections [do] not attach until after conviction and sentence."

*Graham*, 490 U.S. at 393, n.6 (1989).  While Defendants argue that the Sixth Circuit Court of Appeals has held in an unpublished opinion[4] in *Watkins v. Evans*, Nos. 95-4162/95-4341, 1996 U.S. App. LEXIS 25355, at *7-8 (6th Cir. Sept. 3, 1996)(unpublished opinion), that the Eighth Amendment and the Fourteenth Amendment's Due Process Clause provide the same protections, the Sixth Circuit has held, within the last year, that "[t]he law is unsettled as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same." *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010)(involving a pretrial detainee's claim that a corrections officer used excessive force); *see also Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008)("[T]here is room for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does . . . .").

Plaintiff, however, has forfeited any claim to any potentially broader protections provided under the Due Process Clause of the Fourteenth Amendment.  If a Plaintiff does not seek "to invoke the potentially broader protections of the Fourteenth Amendment" and argues the case under the Eighth Amendment standard of "unnecessary and wanton infliction of pain," the Court will analyze that claim

---

[4] The Sixth Circuit considers unpublished decisions only for their persuasive value and does not consider them binding. *Longaberger Co. v. Kolt*, 586 F.3d 459, 468 (6th Cir. 2009)

13

under the Eighth Amendment standard. *Griffin*, 604 F.3d at 953.[5]

Defendants' Motion for Summary Judgment treats the standards as the same, never raising any alternative argument under the Fourteenth Amendment's Due Process Clause. [Record No. 15-2]. While Plaintiff's Response argues that Plaintiff "is entitled to the higher protection standard afforded by the Fourteenth Amendment," Plaintiff does not attempt to invoke any additional protections Plaintiff might have under the Fourteenth Amendment Due Process Clause or lay out what that higher standard of protection might entail. [Record No. 16-1, p. 4]. In fact, Plaintiff, while raising a claim under the Fifth Amendment's Due Process Clause in his complaint, fails to ever raise any Fifth Amendment, or for that matter Fourteenth Amendment, concerns in any future filings. As

---

[5] The Sixth Circuit held in facts similar to this involving a pre-sentencing detainee that the District Court did not err in applying the Eighth Amendment standard to an averred Fourteenth Amendment Due Process Clause violation. *Griffin*, 604 F.3d at 953. Griffin's complaint averred a violation of her constitutional rights under the Fourth Amendment. Complaint at 2 *Griffin v. Hardrick*, No.: 3:08-cv-828, 2009 U.S. Dist. LEXIS 47227 (M.D. Tenn. June 3, 2009). Defendant, however, argued in his Motion for Summary Judgment that the claim properly arose out of a violation of the Fourteenth Amendment and applied the "unnecessary and wanton infliction of pain" standard used under the Eighth Amendment. Defendant's Motion for Summary Judgment at 2 *Griffin v. Hardrick*, No.: 3:08-cv-828, 2009 U.S. Dist. LEXIS 47227 (M.D. Tenn. June 3, 2009). Plaintiff's response agreed to that standard and the district court would decide the case under the Due Process Clause of the Fourteenth Amendment applying the Eighth Amendment standard. Memorandum of Fact and Law in Support of the Plaintiff's Opposition to Summary Judgment at 3 *Griffin v. Hardrick*, No.: 3:08-cv-828, 2009 U.S. Dist. LEXIS 47227 (M.D. Tenn. June 3, 2009); *Griffin v. Hardrick*, No.: 3:08-cv-828, 2009 U.S. Dist. LEXIS 47227 (M.D. Tenn. June 3, 2009).

Plaintiff and Defendant continue to treat the Eighth Amendment standard of "unnecessary and wanton infliction of pain" as the standard that should apply in determining whether there has been a Fourteenth Amendment Due Process Clause violation, this Court shall do likewise.

The test, under the Eighth Amendment, to determine whether the use of force inflicts "an unnecessary and wanton infliction of pain" has both an objective and subjective component. *Griffin*, 604 F.3d at 953-54 (6th Cir. 2010)(citation omitted). As stated by the Sixth Circuit,

> [t]o ascertain whether excessive force was used under the Eighth Amendment, the court must determine whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm. Such a claim has both an objective and a subjective component. The objective component requires that the pain be serious. The subjective component requires that the offending, non-penal conduct be wanton.

*Id.* at 954. (quoting *Watkins v. Evans*, Nos. 95-4162/95-4341, 1996 U.S. App. LEXIS 25355, at *7-8 (6th Cir. Sept. 3, 1996)). For purposes of their Motion, Defendants do not dispute that Plaintiff suffered pain. Defendants argue, however, that Plaintiff has not shown that a genuine issue of material fact exists as to Defendants application of force "in a good-faith effort to maintain or restore discipline." *Id.*

As prison officials dealing with a disturbance must balance

the threat to inmates and staff against the harm an inmate could suffer in putting down the threat, the subjective part of this test looks at the reason that the "offending, non-penal conduct" occurred and its relationship to the conduct in question when determining whether the actions were wanton and unnecessary. *See Combs v. Wilkinson*, 315 F.3d 548, 556-57 (6th Cir. 2002). The Sixth Circuit has set out the following five factors to consider in making this determination:

> (1) the extent of the injury suffered by the inmate, (2) the need for application of force, (3) the relationship between that need and the amount of force used, (4) the threat reasonably perceived by the responsible officials, and (5) any efforts made to temper the severity of a forceful response.

*Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992))(internal quotations omitted)(numbers added). Furthermore, since a disturbance requires a prison official to make quick decisions under pressure, their decisions are granted "wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (quoting *Hudson*, 503 U.S. at 6).

As an initial matter, Plaintiff's sworn statements and deposition testimony will be considered in deciding this motion. Defendants argue that Plaintiff's sworn statements regarding the beginning of the fight and extent of the injuries are "blatantly

16

contradicted" by the record and should be disregarded as such. *Scott v. Harris*, 550 U.S. 372, 380 (2007). This is not the case here. Defendants have submitted a Kentucky State Police Investigator's report stating that "[n]o injuries were found" on Plaintiff after the incident and that the altercation began after Plaintiff turned and made an aggressive move towards Armstrong. [Record No. 15-2, p. 14](citing Record No. 15-7). This, however, hardly establishes such a conclusive record, like the videotape in *Scott v. Harris*, that could be blatantly contradicted at all. Rather, Plaintiff's sworn interrogatory responses listing the injuries to his face, neck and ear causing other hearing and vision loss issues as well as his sworn interrogatory responses stating that Armstrong started the altercation by shoving him over a table and that Armstrong made racial slurs while shouting about his brother during the altercation[6] creates a fact question regarding the nature of the injuries and who instigated the physical confrontation. *Compare Scott*, 550 U.S. at 380 (reversing court of

---

[6] Plaintiff has submitted a sworn affidavit from a trustee at the prison who says he heard from someone who overheard the guards talking that Armstrong was planning to beat up William Sanders in retaliation for Sanders beating up his brother. [Record No. 16-1, p. 3](citing Record No. 16-5). This, however, is hearsay within hearsay as both the overheard statement from the guard and the trustee's informant's statement are "a statement, other than one made by the declarant while testifying . . . offered in evidence to prove the truth of the matter asserted." Fed. R. Evid. 801. Furthermore, while the overheard statement from the guard might qualify as an admission, the informant's statement does not fit any hearsay exceptions and could not be admissible at trial. As a result, it will not be considered here.

appeals decision to adopt driver's story regarding high-speed pursuit that is clearly contradicted by a videotape account) *with Vathekan v. Prince George's Cnty.*, 154 F.3d 173, 180 (4th Cir. 1998)(stating that, at most, a sworn statement contradicted by an unsworn statement made to police creates a credibility question). This fact question, however, does not require a denial of Defendants' Motion for Summary Judgment. While both the extent of the injury and how the incident began will play a role in this Court's consideration of whether Defendants' conduct constituted an "unnecessary and wanton infliction of pain," neither of these disputed facts, taken on its own, is necessarily material to a resolution of this matter under Rule 56. *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)(citation omitted).

Further, even if the Court accepts Plaintiff's account where there is a dispute of fact, the Court concludes that no constitutional violation occurred. There is no dispute that Armstrong requested, using profanity, that Plaintiff pick up his things to which Plaintiff, using profanity, responded that Armstrong could pick up Plaintiff's things for him. [Record No. 15-2, p. 12-13](citing Record No. 35, 36); [Record No. 16-1, p. 2](citing Record No. 16-2, -3]. While parties dispute how it happened, neither party disputes that Plaintiff ended up on the ground in his cell and Defendants held him down as he tried to get up. [Record No. 15-2, p. 13-15](citing Record No. 15-4, -5, -7,

-34]; [Record No. 16-2, p. 4]. Further, Plaintiff does not dispute Defendants assertions that Plaintiff aggressively resisted the officers, attempting to bite Armstrong while he and Hubbard were holding him down and Plaintiff avers that Rigney kicked him.[7] [Record No. 15-2, p. 14-15](citing Record No. 15-4, -34).

Thus, regardless of the questions surrounding the extent of the injury and the manner in which the altercation began, no reasonable jury could conclude that Defendants' conduct constituted "unnecessary and wanton infliction of pain" upon the Plaintiff in violation of Plaintiff's constitutional rights. *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002)(citation omitted). Defendants, as prison officials, "reasonably perceived a threat" to the "internal order and discipline [needed] to maintain institutional security" through Plaintiff's noncompliance with Armstrong's order. *Id.* at 557-58 (citations omitted). Thus, as argued by Defendants, "the safety and security of the facility [were] in jeopardy [requiring] prompt reaction by the JCDC staff and named deputy defendants." [Record No. 15-2]. As the incident escalated when Plaintiff resisted the officers and attempted to bite Armstrong, the amount of force required also escalated. Thus, even if Plaintiff's injuries are as severe as stated and the

---

[7] Rigney disputes that he was in the cell at all during this time and rather states he was on the first floor at the time of the incident before being called up to the second floor to assist Armstrong and Hubbard. [Record No. 15-2, p. 13-14](citing Record No. 15-4, -5).

incident began as Plaintiff describes, Defendants have shown a "need for [the] application of force" which was proportional to the amount of force used to answer a "reasonably perceived" threat by Defendants. *Combs*, 315 F.3d at 557.

This Court finds, therefore, that this showing, in conjunction with the "wide-ranging deference" afforded prison officials in the policies and procedures enacted to maintain discipline and security, establishes the absence of a genuine issue of material fact and that no constitutional violation occurred. Defendants, therefore, are entitled to qualified immunity. As a result, this Court shall grant Defendants' Motion for Summary Judgment and dismiss with prejudice Plaintiff's complaint averring a violation of Plaintiff's constitutional rights under 42 U.S.C. § 1983 and conspiracy to violate Plaintiff's civil rights.

### C. This Court declines to exercise jurisdiction over Plaintiff's pendent state claims.

As this Court has decided to dismiss Plaintiff's lone federal claims, this Court shall also not consider state defenses and state claims raised in said motion and Plaintiff's complaint. 28 U.S.C. § 1367 provides, in pertinent part, that "[t]he district courts may decline to exercise supplemental jurisdiction [over all other claims that form part of the same case or controversy] if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ." 28 U.S.C. § 1367(c)(3). Further, "[n]eedless decisions of state law should be avoided both as a

matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966); *see also Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)(stating the dictum in *Gibbs* generally remains valid when analyzing whether state claims should be dismissed under 28 U.S.C. § 1367). Therefore, while Plaintiff's complaint and Defendants Motion for Summary Judgment make arguments regarding state law torts and immunities, this Court, pursuant to 28 U.S.C. § 1367(c)(3), exercises its discretion not to make "[n]eedless decisions of state law," and shall dismiss without prejudice Plaintiff's remaining claims against the Jessamine County Detention Center. 28 U.S.C. § 1367(c)(3); *Gibbs*, 383 U.S. at 726.

**IV.   CONCLUSION**

Accordingly, for the above-stated reasons,

**IT IS ORDERED:**

(1)  that Plaintiff's Motion to Strike Exhibits Attached to Defendants' Motion for Summary Judgment [Record No. 18] is **DENIED;**

(2)  that Defendants' Motion for Summary Judgment [Record No. 15] is **GRANTED;**

(3)  that Plaintiff's claims against Defendants Jessamine County, Kentucky, Samuel Armstrong, in his official capacity, Jerry Hubbard, in his official capacity, and Mike Rigney, in his official capacity are **DISMISSED WITH PREJUDICE;**

21

(4) that Plaintiff's claims averring **"Count I: Violation of constitutional rights under 42 U.S.C. 1983"** and **"Count II: Conspiracy to violate Civil Rights"** and **"Count VII: Equal Protection, Due Process and Cruel and Unusual Punishment"** against Samuel Armstrong, in his individual capacity, Jerry Hubbard, in his individual capacity, and Mike Rigney, in his individual capacity are **DISMISSED WITH PREJUDICE**; and

(5) that all remaining claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

This the 10th day of February, 2011.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge